ROBERT T. BASS, Respondent, v. HENRY B. SANBORN et al., Appellants.

Kansas City Court of Appeals, June 4, 1906.

1. EQUITY: Pleading: False Representation: Cancelling Note. A petition to cancel a note charged false and fraudulent representations as to the value of the corporate stock for which the note was given. The bill further charges that the note was given and secured by the stock as an accommodation to one S—— and without any consideration whatever, and that the plaintiff was not to pay it. *Held*, if he was not to pay the note, the false and fraudulent representations as to the value of the stock and the fact of no consideration are immaterial.

2. ———: ———: **Consideration: Evidence: Payment.** Want of consideration partial or total may be shown, but it is not permissible for the maker to prove that at the time of the execution of the note it was agreed that he need not pay it.

3. ———: ———: **Cancelling Note: False Representation: Innocent Purchaser.** Whether in an action to cancel a note a fraudulent representation made with a view of inducing the maker to believe that he would not suffer harm by executing the note as an accommodation note, would avail, *quaere?*

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Young* and *Halstead & Halstead* for appellants.

(1) There was a failure of proof. Beck v. Ferara, 19 Mo. 30; Phleger v. Weltner, 21 Mo. App. 580; Priest v. Way, 87 Mo. 16; Chitty v. Railway Co., 148 Mo. 64; Clements v. Yeates, 69 Mo. 623; Cole v. Armour, 154 Mo. 333. (3) The court erred in admitting oral testimony to show that there was an oral agreement between Sanborn and Bass that Bass would not be required to pay the note in controversy. Jones v. Shaw, 67 Mo. 667; Bank v. Fesler, 89 Mo. App. 217; Frissell v. Mayer, 13 Mo. App. 331. (4) The court erred in overruling defendants' demurrer to plaintiff's evidence. (a) Plaintiff's testimony did not prove the cause of action pleaded in the petition. (b) Plaintiff's testimony showed that the note was given for a consideration. (c) Plaintiff's testimony showed a confirmation of the purchase of the stock by the failure of plaintiff to rescind promptly upon discovering the alleged fraud. (5) The finding and judgment of the trial court was for the wrong party. Beebe v. Hatfield, 67 Mo. App. 615; Priest v. White, 89 Mo. 609.

*Scarritt, Griffith & Jones* for respondent.

(1) The statement of facts in this case is sufficient in itself to support the decree of the court. Wannell v. Kem, 57 Mo. 479; Hess v. Draffen & Co., 99 Mo. App. 580; Herman v. Hall, 140 Mo. 276; Wickham v. Grant, 28 Kan. 517. (2) Something is said in defendant's brief to the effect that what Sanborn said in regard to the condition of the company was a mere expression of opinion and not a statement of fact. This point is settled by the case Bank v. Hunt, 76 Mo. 444. (3) The assertion of appellant in his brief that there was a failure of proof in this case is puerile and cannot have been seriously meant. (4) The claim on the part of appellant that the court committed error in admitting proof of the representations of Sanborn that he would protect the plaintiff on said note and that it was executed for his accommodation, is clearly without merit.

ELLISON, J.—Plaintiff brought his bill in equity to set aside and cancel a promissory note for $1,000, which he had executed to defendant Sanborn. The judgment in the trial court was for the plaintiff.

It appears from the allegations in the bill that Sanborn was president of the Goodloe-McClelland Commission Company and that he sold to plaintiff ten shares of the stock of the company for $1,000. And that then he proposed to sell him another ten shares for $1,000. At first, plaintiff declined to purchase the additional shares. But Sanborn falsely and fraudulently represented that the company had $18,000 in its treasury and was solvent; that $30,000 of its $50,000 capital was paid up in cash; that it had no losses and that its assets, consisting of mortgages and notes, were as good as gold. That Sanborn represented that it would be better for the business of the company if he, plaintiff, would take these additional shares and that if he would permit such additional shares to be issued in his name and execute

the note in controversy and put up the additional shares as collateral to secure the same, that he, Sanborn, would pay for the stock (that is, pay the note) and protect plaintiff against any liability. That plaintiff, relying upon all said representations, thereupon did execute the note and that "it was made for the accommodation of said Sanborn and without any consideration whatever moving from said Sanborn to plaintiff, and on the representation that said Sanborn would protect plaintiff on said note and pay for the additional ten shares of stock. That Sanborn wholly disregarding his duty to plaintiff and for the purpose of injuring and defrauding him" had the books of the company show an assignment of the note to the company, he, Sanborn, taking credit for the amount thereof on his personal account. It is then charged that the company knew the note was made without consideration and for the accommodation of Sanborn.

It will be observed that the bill charges fraudulent and false representations as to the value of the stock, the condition of the company, etc. It then charges that the note was given and the stock put up to secure it, as an accommodation to Sanborn and without any consideration and that plaintiff was not to pay it. If this be true, then it would seem that all fraudulent and false representations as to the value of the stock and assets, the condition of the company, etc., are of no consequence. For, if plaintiff executed the note to Sanborn, ostensibly for stock, though in reality as a mere formality, and which he was never to pay, it would be of no consequence to plaintiff what false statements Sanborn may have made to him about the value of the stock or the condition of the company. If plaintiff was not to pay anything for it, he could not be defrauded by Sanborn's representations. He complains that the stock was of no value and that he got no consideration for the note. But if he was not to pay the note, he was not entitled to receive any consideration.

It appears to us, therefore, that these allegations of fraudulent and false representations as to the value of the stock and assets and the condition of the company, as well as evidence received on that head, have no place in the case. This is made to further appear by observing the decree which, in effect, finds that plaintiff was induced by false and fraudulent representations to execute a note he was never to pay.

The case then is left to stand on the allegation that plaintiff executed the note for Sanborn's accommodation without any consideration and with the agreement and understanding that he was not to pay it. Want of consideration, partial or total, may be shown. [Sec. 645, R. S. 1899.] But it seems well settled that it is not permissible for the maker of a note to prove that though he executed the paper, it was, at the time, agreed that he need not pay it. [Jones v. Shaw, 67 Mo. 667; Smith v. Thomas, 29 Mo. 307; Barnard State Bank v. Fesler, 89 Mo. App. 217.]

From the foregoing, it is apparent that the decree cannot stand. But we believe it to be proper that we should remand the cause since it may be that it was intended to state a case freed from the objections we have pointed out. It may be that the fraudulent representations as to the value of the stock, condition of the company, etc., were made with a view of leading plaintiff to believe he could not suffer harm by executing the note for Sanborn's accommodation, since the stock, which was to secure it, would be of sufficient value to liquidate it. Or, it may be that plaintiff's case in reality is no more than defense to a note gotten of him without any consideration with the fraudulent purpose of negotiating to an innocent purchaser so as to compel him to pay it. Whether either of these suppositions of ours have any foundation in fact; or whether either of them would afford ground for relief, we, of course do not pretend to say. But we are satisfied that there is such inconsistency in material portions of the case as it is stated and

as it was tried, as renders it necessary to set aside the de-cree, which is accordingly done and the cause remanded, the plaintiff to take such course as may be proper. All concur.